ALEJANDRO BARAJAS (SBN: 305870)
1930 Wilshire Boulevard, Suite 1207
Los Angeles, CA 90057
Phone: (323) 522-4188
Fax: (323) 849-3394
Email: alejandro@barajaslawoffice.com

*Attorney for Petitioner*

**UNITED STATES DISTRICT COURT FOR THE**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SERGIO SALVADOR SALAZAR SORTO**<br><br>Petitioner(s),<br><br>vs.<br><br>Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; Todd BLANCHE, U.S. Attorney General; David VENTURELLA, Acting Director, Immigration and Customs Enforcement; WARDEN, Adelanto ICE Processing Center / Desert View Facility; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; IMMIGRATION AND CUSTOMS ENFORCEMENT; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES (USCIS); and U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>Respondent(s). | Case No.:<br><br>PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF<br><br>[28 U.S.C. § 2241]<br><br>RELATED CASE:<br>Salazar-Sorto v. Warden, Adelanto ICE Processing Center, et el.,<br>No. 2:26-cv-00418-HDV-KES |

## I. INTRODUCTION

1. Petitioner Sergio Salvador Salazar Sorto ("Petitioner") is a 32-year-old native and citizen of El Salvador who has lived in the United States since he was a child. He is the father of three United States citizen children, ages 10, 5, and 3. As of the filing of this Petition he has been detained by U.S. Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center for 218 consecutive days.

2. Petitioner is detained under 8 U.S.C. § 1226(a). He is not subject to a final order of removal. He is not subject to mandatory detention. He has an application for cancellation of removal under 8 U.S.C. § 1229b(b)(1) pending before the Adelanto Immigration Court.

3. On July 20, 2026, the Adelanto Immigration Court held a bond hearing at which, as the Immigration Judge's own written order confirms, the Department of Homeland Security ("DHS") bore the burden of proving by clear and convincing evidence that Petitioner should remain detained. The Immigration Judge expressly found that DHS failed to carry that burden as to dangerousness. She nonetheless ordered Petitioner detained on the ground of flight risk.

4. That flight-risk determination cannot stand, for three independent reasons.

5. First, the burden was inverted. DHS offered no affirmative evidence at the July 20 hearing. Its entire evidentiary submission consisted of a single item: a copy of its own filing from the earlier May 2026 bond hearing, at which the burden had rested on Petitioner. DHS's counsel opened by announcing that she had not prepared to examine Petitioner and asked to proceed directly to argument. The Immigration Judge stated on the record that she did not "see how the department can meet their burden without asking the respondent questions," and that DHS's "arguments alone are arguments and not facts." She then directed DHS to question Petitioner and, when that questioning proved unproductive, conducted the examination herself. Every fact on which the Court ultimately relied was elicited by the Court. And in announcing her decision, the Immigration Judge framed the question as whether she was persuaded that Petitioner would

appear, stating, "I don't believe or I am not persuaded that you would be," before appending the conclusion that "the department has met its burden."

6. Second, the written order rests on facts the record contradicts and on grounds the oral decision never announced. The written order of July 22, 2026 makes Petitioner's 2018 conviction the centerpiece of the flight-risk finding, the very conviction as to which the Immigration Judge had orally found DHS's evidence insufficient two days earlier. It omits the residential, employment, and tax findings that the oral decision identified as its bases. And it concludes by weighing whether "the negative equities in this case outweigh the positive equities," a balancing formulation that is not the clear and convincing evidence standard.

7. The same inversion appears in the Immigration Judge's treatment of the sponsor evidence. She gave Petitioner's letter of support "minimal weight" and then treated that weakness as a reason to conclude that DHS had carried its burden. But where the government bears the burden of proof, discounting the respondent's evidence does not produce government proof; it leaves the record empty. A thin letter of support is not affirmative evidence that a man will abscond.

8. Third, having found that Petitioner is not a danger to the community, the Immigration Judge was required to consider whether conditions short of detention would secure his appearance. She did not. No party mentioned electronic monitoring, the Intensive Supervision Appearance Program, telephonic or in-person reporting, or ability to pay at any point in the hearing. The order recites the conclusion that "no amount of bond or conditions" would suffice without any supporting analysis. The notice that set the hearing had told Petitioner that "[t]he Immigration Judge will consider alternatives to detention, such as supervised release and electronic monitoring."

9. Petitioner has now been detained for over seven months on the strength of a hearing at which the government introduced no evidence. He seeks a writ of habeas corpus

ordering his immediate release or, in the alternative, a new bond hearing before a different Immigration Judge at which the government is held to the burden it was assigned, and at which alternatives to detention are considered.

## II. JURISDICTION

10. This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq.

11. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (federal habeas statute); 28 U.S.C. § 1331 (federal question); 28 U.S.C. §§ 2201–02 (Declaratory Judgment Act); and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). Relief is available under 28 U.S.C. § 2241 et seq., the Declaratory Judgment Act, and the All Writs Act, 28 U.S.C. § 1651.

12. Petitioner is "in custody" for purposes of 28 U.S.C. § 2241 because he is detained by Respondents at the Adelanto ICE Processing Center.

13. Section 1226(e) does not bar review. The Ninth Circuit has held that § 1226(e) "does not strip a district court of its traditional habeas jurisdiction, bar constitutional challenges[,] or preclude a district court from addressing a habeas petition challenging the statutory framework that permits the petitioner's detention without bail." Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011); accord Martinez v. Clark, 124 F.4th 775, 781–82 (9th Cir. 2024). The agency's "discretionary judgment does not include constitutional claims or questions of law." Martinez, 124 F.4th at 781.

14. In Martinez, the Ninth Circuit held that whether a noncitizen is dangerous for immigration-detention purposes is "a mixed question of law and fact" reviewable as a "question of law." 124 F.4th at 779. Its reasoning was that Matter of Guerra "requires IJs to weigh nine

factors, and apply a legal standard to a given set of facts," so that a federal court may "assess whether an IJ correctly applied the statutory standard to a given set of facts." Id. at 783.

15. That reasoning applies with at least equal force to flight risk. Guerra prescribes a single nine-factor framework governing both dangerousness and risk of flight, and several of its factors bear on flight risk alone: the noncitizen's "record of appearance in court" and "any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities." Matter of Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006). If Guerra supplies a legal standard adequate to render a dangerousness finding reviewable, it necessarily supplies one for the flight-risk findings its factors were principally designed to address.

16. District courts in this Circuit have applied Martinez to the custody decisions of Immigration Judges, and not only to those of the Board. See Y.S.G. v. Andrews, No. 2:25-cv-1884-SCR, 2025 WL 2979309, at *9 (E.D. Cal. Oct. 22, 2025).

17. Claims that the agency failed to apply the legally required burden of proof, ignored probative record evidence, or misstated the record are claims of legal error reviewed de novo. Martinez, 124 F.4th at 785–86.

18. This action is related to Salazar-Sorto v. Warden, Adelanto ICE Processing Center, No. 5:26-cv-00418-HDV-KES (C.D. Cal.), in which this Court granted a petition for writ of habeas corpus and entered judgment on June 11, 2026. Petitioner submits a Notice of Related Case pursuant to Local Rule 83-1.3.

**III. VENUE**

19. Venue is proper under 28 U.S.C. § 2241(c)(3) and 28 U.S.C. § 1391(b)(2) and (e) because Petitioner is detained at the Adelanto ICE Processing Center in Adelanto, California, within this District, and because a substantial part of the events giving rise to these claims occurred and continues to occur there.

20. The Adelanto ICE Processing Center and the Adelanto Immigration Court are located in San Bernardino County, and this matter is properly assigned to the Eastern Division.

## IV. EXHAUSTION

21. Neither 28 U.S.C. § 2241 nor the INA imposes a statutory exhaustion requirement for a habeas challenge to immigration detention. Exhaustion here is therefore prudential, and this Court has discretion to waive it. Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017); Laing v. Ashcroft, 370 F.3d 994, 997–98 (9th Cir. 2004); Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001).

22. Prudential exhaustion may be waived where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing, 370 F.3d at 1000.

23. Counsel reserved appeal on the record at the July 20, 2026 hearing, and the Immigration Judge's written order reflects that reservation. Petitioner does not pursue an administrative appeal, and respectfully asks this Court to excuse prudential exhaustion for the reasons that follow. The exceptions recognized in Laing are stated in the disjunctive and turn on whether an administrative remedy would be adequate, efficacious, or futile — not on whether it was first attempted. A remedy that would be futile is not made less so by filing for it.

24. The Laing factors are satisfied here. The agency has now made two custody determinations on materially the same record and reached the same result under opposite burdens of proof. On May 12, 2026, the Immigration Court denied bond with the burden on Petitioner. On July 22, 2026, it denied bond again with the burden on the Department by clear and convincing evidence, on a record to which the Department added no evidence at all, and at which the Immigration Judge stated that the Department's "arguments alone are arguments and not

facts." Further administrative review of that same record is neither adequate nor efficacious, and pursuit of it would be a futile gesture. Laing, 370 F.3d at 1000 (quoting S.E.C. v. G.C. George Sec., Inc., 637 F.2d 685, 688 (9th Cir. 1981)). The Ninth Circuit has excused exhaustion in this precise posture. In Marquez v. INS, 346 F.3d 892 (9th Cir. 2003), waiver was appropriate where the petitioner challenged the length of his detention pending removal rather than his removability, a claim distinct from the issue the Board had decided. And in Ali v. Ashcroft, 346 F.3d 873, 878 (9th Cir. 2003), prudential exhaustion was waived in part because it would be futile to require exhaustion where the government's position was set. See Laing, 370 F.3d at 1000–01 (discussing both). Petitioner likewise challenges his detention, not his removability. Cf. Vasquez-Rodriguez v. Garland, 7 F.4th 888, 895–96 (9th Cir. 2021).

25. Irreparable injury will also result. Petitioner has been detained for 218 days and continues to suffer irreparable injury each additional day. See Minango v. Bondi, No. 2:26-cv-00235-ART-BNW (D. Nev. May 6, 2026) (waiving exhaustion where the petitioner had been detained over seven months and "will continue to suffer irreparable harm each day he is in immigration detention," and where the agency's position was already set). Petitioner's claim regarding the July 20, 2026 determination would likewise be capable of evading review: were he removed while an administrative appeal was pending, the claim would become moot.

26. Further, the Board does not routinely transcribe bond proceedings, does so only "at the discretion of the Board," and will not delay its briefing schedule to await transcription. See BIA Practice Manual 3.2(f), 6.3; Matter of Chirinos, 16 I. & N. Dec. 276, 277 (BIA 1977) ("There is no right to a transcript of a bond redetermination hearing."). The errors alleged here appear principally in the oral record and in the divergence between the oral and written decisions. Administrative review conducted without the benefit of that record is not an efficacious remedy for these claims.

## V. PARTIES

**27.** Petitioner Sergio Salvador Salazar Sorto is a native and citizen of El Salvador, born July 28, 1994. He is currently detained at the Adelanto ICE Processing Center in the custody and under the direct control of Respondents.

**28.** Respondent Warden of the Adelanto ICE Processing Center / Desert View Facility has immediate physical custody of Petitioner pursuant to the facility's contract with U.S. Immigration and Customs Enforcement and is Petitioner's immediate custodian.

**29.** Respondent David Venturella is sued in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement. Respondent U.S. Immigration and Customs Enforcement is the component of the Department of Homeland Security that arrested Petitioner, that detains him, and that appeared as the Department before the Immigration Court. Respondent Venturella is a legal custodian of Petitioner and has authority to release him.

**30.** Respondent Markwayne Mullin is sued in his official capacity as Secretary of the U.S. Department of Homeland Security. Respondent U.S. Department of Homeland Security is charged with the administration and enforcement of the immigration laws, and Respondent United States Citizenship and Immigration Services is the component of that Department that adjudicated Petitioner's applications for deferred action and employment authorization. Respondent Mullin is a legal custodian of Petitioner.

**31.** Respondent Todd Blanche is sued in his official capacity as Attorney General of the United States. Respondent Executive Office for Immigration Review is the component of the Department of Justice that administers the immigration courts and the Board of Immigration Appeals, and that conducted the custody redetermination proceedings at issue in this Petition.

## VI. STATEMENT OF FACTS

### A. Petitioner's History and Family Ties in the United States

32. Petitioner was born in El Salvador on July 28, 1994. He entered the United States on or about April 4, 2007, when he was twelve years old. That entry date is reflected in the Form I-213 the Department placed in the bond record. He has lived here continuously since and has never departed the United States.

33. Petitioner was encountered by immigration authorities in 2007 near Phoenix, Arizona, shortly after his entry, and was released. He was a child at the time. His immigration matters were handled by his parent, and he was not informed of the nature of the proceedings.

34. Petitioner was granted Deferred Action for Childhood Arrivals ("DACA"). His DACA subsequently expired. He applied twice to renew it and was not granted renewal; he was never told why.

35. Petitioner is the father of three United States citizen children, ages 10, 5, and 3. The children's mother is a United States citizen.

36. Before his detention, Petitioner saw his children daily and was responsible for their care from school. Since his detention, the children have been upset and withdrawn, have asked repeatedly when he is coming home, and have had behavioral difficulties at school. The children have visited Petitioner at Adelanto three times, brought by their mother.

37. Petitioner's extended family in the United States includes his mother, a brother, aunts, uncles, and cousins, several of whom are United States citizens or lawful permanent residents. Substantially all of his family lives in the United States.

38. Petitioner has one conviction. On July 12, 2018, he was convicted of violating California Penal Code § 236 (false imprisonment) and § 243(e)(1) (domestic battery), arising from a single incident. He served 89 days. He was placed on five years' probation, which he completed in or about 2023.

39. Petitioner was ordered to complete 52 domestic violence classes. He completed them, and also completed alcohol classes, within the one-year period allotted, before the deadline. He has not consumed alcohol since the incident.

40. The 2018 incident is the only arrest of Petitioner's life. He has had no contact with law enforcement in the eight years since.

41. Neither conviction has been charged as a ground of removability or asserted as a bar to relief. The Department has never contended that either offense disqualifies Petitioner from applying for cancellation of removal. See Turijan v. Holder, 744 F.3d 617 (9th Cir. 2014); Matter of Sanudo, 23 I. & N. Dec. 968 (BIA 2006).

**B. The 2008 In Absentia Order and Its Rescission**

42. On May 19, 2008, an in absentia order of removal was entered against Petitioner. He was thirteen years old. He received no notice of the hearing and had no knowledge of the proceedings.

43. On February 26, 2026, Petitioner filed a motion to reopen with the West Los Angeles Immigration Court.

44. On March 11, 2026, Immigration Judge Yvan Murad granted the motion to reopen, exercising sua sponte authority and citing the "substantial new facts and equities" and Petitioner's "demonstrated interest in continuing to pursue his legal status." The 2008 in absentia order was rescinded.

45. Petitioner is therefore not subject to any final order of removal. His detention is governed by 8 U.S.C. § 1226(a).

46. Petitioner has filed an application for cancellation of removal for certain nonpermanent residents under 8 U.S.C. § 1229b(b)(1), together with a motion for a fee waiver. That application is pending before the Adelanto Immigration Court and has not been adjudicated. Petitioner has been continuously present in the United States since April 4, 2007. Petitioner does

not ask this Court to assess its merits; what matters here is that the application is filed and awaiting a hearing.

47. Cancellation of removal is available only in immigration court. Petitioner cannot obtain it unless he appears at his hearings.

**C. Petitioner's Arrest and Detention**

48. On January 12, 2026, Petitioner was arrested by ICE agents at Long Beach Airport, where he had cleared security and was waiting to board a flight. Approximately six agents surrounded him. He was shown an ICE badge and told that he had a deportation order because his DACA had expired. He was handcuffed and removed from the airport. He was presented with no warrant signed by a judicial officer.

49. Petitioner was transported to a holding facility in downtown Los Angeles. He was told by a person identifying himself as a district attorney that "he should sign the documents because he had nothing to fight for." He arrived at the Adelanto ICE Processing Center at approximately 4:30 a.m. the following day.

50. Petitioner has been continuously detained since January 12, 2026, a period of 218 days as of the filing of this Petition.

**D. The First Habeas Action and This Court's Judgment**

51. On January 30, 2026, Petitioner filed a petition for writ of habeas corpus in this Court, No. 5:26-cv-00418-HDV-KES. The same day, the Court issued a temporary restraining order enjoining Respondents from transferring or removing Petitioner outside the Central District of California.

52. On March 19, 2026, notwithstanding the standing temporary restraining order, Respondents transferred Petitioner to a facility in Florence, Arizona. He was held there approximately four days, during which he was denied contact with counsel and was housed in a

unit holding roughly fifty men in a space designed for twenty-five. He was presented with documents to sign and declined to sign them. The transfer was halted only after counsel intervened.

53. On April 17, 2026, Respondents answered the First Amended Petition and admitted that Petitioner was entitled to a bond hearing.

54. On April 29, 2026, the Magistrate Judge issued a Report and Recommendation recommending that the petition be granted and that Respondents be enjoined from continuing to detain Petitioner unless he was provided an individualized bond hearing before an immigration court pursuant to 8 U.S.C. § 1226(a).

55. On June 11, 2026, this Court entered judgment granting the petition.

**E. The May 2026 Bond Hearing**

56. On May 12, 2026, the Adelanto Immigration Court held a bond hearing pursuant to the Notice of Custody Redetermination Hearing issued May 11, 2026. The burden was placed on Petitioner. By order of the same date, bond was denied. The order recites: "TRO Bond - Burden - Respondent (236A) - Detained 120 days."

57. The May 12 order found that Petitioner "failed to meet his burden to demonstrate that his release would not pose a danger to the community and that he would not represent such a significant risk of flight that no amount of bond or alternatives to detention would be sufficient to mitigate."

58. The sponsor letter in the record at that hearing was from Boris Salazar, Petitioner's cousin, who committed to housing Petitioner at his residence in Downey, California, to providing food, lodging, and transportation, and to ensuring that Petitioner attends all scheduled immigration hearings, check-ins, and any other appointments required by the Department of Homeland Security or the Court.

**F. The July 20, 2026 Bond Hearing**

59. By July 2026, Petitioner had been detained more than 180 days. A further custody redetermination hearing was noticed and held on July 20, 2026 before Immigration Judge Susan Phan, at which the burden rested on DHS by clear and convincing evidence. The Immigration Judge's written order states the standard expressly: "Rodriguez Bond hearing: DHS's burden by clear and convincing evidence."

60. The hearing was set by a Notice of Custody Redetermination Hearing issued July 9, 2026, served on counsel and on DHS, accompanied by a document the notice designates an "RBH SUPPLEMENT" and titles "Supplement to Notice of Custody Determination Hearing Under Rodriguez v. Robbins." The supplement states that the hearing is scheduled "as ordered by the federal district court in Rodriguez v. Robbins," and that "the government must prove by clear and convincing evidence that you are a flight risk or danger to the community to keep you detained." It defines the flight-risk showing: "To show that you are a flight-risk, the government must show that you are not likely to appear for future immigration hearings or for removal." The notice and supplement were admitted before the Immigration Court as Exhibit 2.

61. The same supplement states: "The Immigration Judge will consider alternatives to detention, such as supervised release and electronic monitoring, in determining whether you can be released."

62. Petitioner appeared by WebEx from Adelanto and was represented by counsel throughout. The proceedings were conducted in English, confirmed before the hearing as Petitioner's best language. Five exhibits were admitted without objection.

63. DHS's entire evidentiary submission for the hearing, filed July 19, 2026, consisted of a single item, identified in its own table of contents as "DHS Prior Bond Filing 5/8/2026." That prior filing contained three tabs: a Form I-213, an FBI rap sheet, and a PCIS

report. DHS submitted no arrest report, no police report, no conviction record, no declaration, and no witness.

64. DHS counsel opened by stating that she had not prepared to examine Petitioner: "Usually, they don't allow the DHS to cross, so I didn't really, uhm, do that. So can I just start my argument . . . Because we had like nine bond cases."

65. DHS counsel asked the Court to take judicial notice of the May 2026 bond denial, at which the burden had rested on Petitioner, while acknowledging that "just because he got denied when the burden was on him doesn't mean the government can meet its burden of proof . . . on the same facts." She argued that there was no "material change in circumstance." The record does not reflect a ruling on that request.

66. The Immigration Judge interrupted DHS's argument to state that DHS could not carry its burden by argument alone: "Ms. Gonzalez, to be frank with you, while argument is argument, it is the department's burden and by clear and convincing evidence, and so I don't take lightly . . . I don't see how the department can meet their burden without asking the respondent questions." She added: "because your arguments alone are arguments and not facts."

67. The Immigration Judge then directed DHS to examine Petitioner. When DHS's examination did not develop the facts, the Immigration Judge conducted the examination herself. She elicited the testimony concerning Petitioner's residential history, his employment history, his tax filings, his proposed release address, and his sponsor. Each of these subjects became a stated basis for the denial of bond.

68. DHS asserted at the outset that Petitioner had been "ordered removed back in 2008," then abandoned the subject: "you say you don't know if you have a removal, uhm, strike that. . . . I'm not going to ask that question." No removal order was placed in evidence. The order had, in any event, been rescinded on March 11, 2026.

69. Petitioner testified that his employment had been unstable "for the last two years."

70. Petitioner testified that he had always filed tax returns except for the last two years, and explained that he had not done so because he lacked stable work and expected to owe money.

71. Petitioner testified that his proposed sponsor was a woman from his church whom the congregation addresses as "sister," whose first name he gave as "Elsa," whose last name he did not know, and whose street he identified as Martin Luther King in the Koreatown area of Los Angeles.

72. After the examination had closed and as the Immigration Judge was turning the floor over to Petitioner's counsel, DHS counsel interjected: "Uhm, your Honor, could I just point out that the only sponsor letter is Elva, not Elsa, and it's in Panorama City. Thank you." The Immigration Judge responded, "Okay, thank you." The discrepancy was never put to Petitioner. Neither Petitioner nor his counsel was asked about it or given any opportunity to address it.

73. Petitioner's counsel argued, among other things, that Petitioner is pursuing cancellation of removal, that the relief "can only be pursued in court," and that Petitioner's "interest in continuing to attend these hearings is . . . vital to the eventual success of his entire immigration case."

74. No party at any point in the hearing mentioned electronic monitoring, GPS monitoring, the Intensive Supervision Appearance Program, telephonic or in-person reporting, any other condition of supervision, or Petitioner's or any sponsor's ability to pay a bond.

**G. The Oral Decision**

75. The Immigration Judge found that DHS had not met its burden on dangerousness: "I'm not, I don't believe the department has met their burden to establish that you are a danger to the community. I do not have any arrest reports or police reports to corroborate the details of the events that occurred in 2018, they were approximately eight years ago."

76. She then found Petitioner a flight risk "such that no amount of bond or conditions would secure your future court appearance." She stated: "Ultimately the test is, would you present yourself for removal, uhm, should that removal order be enforced? And given the totality of the record, I don't believe or I am not persuaded that you would be and I am finding the department has met its burden."

77. The stated bases for the oral flight-risk finding were: (a) that Petitioner's United States citizen children "can[not] help you derive status," for example through adjustment of status; (b) the absence of "a stable residential history or an employment history"; (c) that Petitioner had stated he lacked stable employment "for the last three years"; (d) that instability "does not excuse your obligations to file taxes"; and (e) "the absence of a valid, reliable, and credible sponsor," because Petitioner "did not know your sponsor's last name and . . . nor the specific address where you would reside."

78. Petitioner testified that his employment had been unstable for two years, not three.

**H. The Written Order of July 22, 2026**

79. Two days after the hearing, the Immigration Judge issued a written order denying bond. Its reasoning differs materially from the oral decision.

80. The written order makes Petitioner's 2018 conviction the lead basis for the flight-risk finding: "The record does not provide that Respondent has fully appreciated the nature of his conviction. . . . His failure to fully acknowledge the consequences of his actions raises concern about his appreciation for his prior criminal conduct." It adds that "Respondent also admitted to working in the U.S. without a work permit," and concludes that "[h]is failure to appreciate the gravity of his prior criminal conduct and requirements of the law raises concern for his appreciation for this countries immigration laws. Given this, the Court is not confident that he would present himself for removal, should removal become necessary."

81. The written order thus rests the flight-risk finding on the same 2018 conviction as to which the Immigration Judge had orally found DHS's evidence insufficient: "I do not have any arrest reports or police reports to corroborate the details."

82. The written order omits entirely the residential-history, employment-history, and tax findings that the oral decision identified as bases for the ruling.

83. On the sponsor, the written order states that Petitioner "presented evidence showing that he has a sponsor," that the record "reflects that there is a sponsor listed as 'Elva Albert,'" that the record "does not provide that this is a 'valid, reliable, and credible sponsor,'" that "[a]bsent from the sponsor's letter is any assurances that she would ensure his future court appearances," and that "Respondent's sponsor was not available for cross examination." It assigns the sponsor's affidavit "minimal weight," citing Mukulumbutu v. Barr, 977 F.3d 924, 927 (9th Cir. 2020).

84. DHS never requested to cross-examine the author of the letter, and the Immigration Judge did not continue the hearing to permit her to appear.

85. The written order concludes: "While Respondent has been in the U.S. for a significant period of time, and has 3 USC minor children, the negative equities in this case outweigh the positive equities in this case."

## VII. LEGAL FRAMEWORK

86. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). The Fifth Amendment

entitles noncitizens to due process of law in removal proceedings. Demore v. Kim, 538 U.S. 510, 523 (2003); Reno v. Flores, 507 U.S. 292, 306 (1993).

87. Civil immigration detention is constitutionally permissible only to prevent flight or to mitigate danger to the community. Zadvydas, 533 U.S. at 690; Demore, 538 U.S. at 528.

88. The allocation of the burden of proof is not in dispute in this case. The Immigration Judge's written order states the standard she applied: "Rodriguez Bond hearing: DHS's burden by clear and convincing evidence." Petitioner therefore need not establish an entitlement to that allocation. The question presented is whether the standard the Immigration Judge recited is the standard she applied.

89. That allocation is also what due process requires where detention has become prolonged, generally six months or more. Singh v. Holder, 638 F.3d 1196, 1203–06 (9th Cir. 2011); Diouf v. Napolitano, 634 F.3d 1081, 1091–92 & n.13 (9th Cir. 2011). Singh's burden-allocation holding is a constitutional holding that survives Jennings v. Rodriguez, 583 U.S. 281, 138 S. Ct. 830 (2018). See Aleman Gonzalez v. Barr, 955 F.3d 762, 781 (9th Cir. 2020) ("[B]ecause Jennings did not invalidate this court's constitutional due process holding in Singh, the district court properly required the Government to bear a clear and convincing burden of proof at such bond hearings."), rev'd on other grounds, 142 S. Ct. 2057 (2022); Rodriguez Diaz v. Garland, 53 F.4th 1189, 1202 n.4 (9th Cir. 2022) (declining to abrogate Singh).

90. The clear and convincing standard requires "an abiding conviction that the truth of the factual contentions is highly probable." Mondaca-Vega v. Lynch, 808 F.3d 413, 422 (9th Cir. 2015) (en banc). It is "a high burden and must be demonstrated in fact, not in theory." Obregon v. Sessions, No. 17-cv-01463-WHO, 2017 WL 1407889, at *7 (N.D. Cal. Apr. 2017) (quotation omitted).

91. The Supreme Court has imposed a heightened burden on the government across the range of civil detention because of the individual interests at stake. See United States v.

Salerno, 481 U.S. 739, 751 (1987); Addington v. Texas, 441 U.S. 418, 425–27 (1979). Where the "possible injury to the individual" is so significant, the individual should not "share equally with society the risk of error." Singh, 638 F.3d at 1203–04 (quoting Addington, 441 U.S. at 427).

92. In evaluating custody, an Immigration Judge weighs the nine factors set out in Matter of Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006): fixed address; length of residence; family ties, and whether they may entitle the noncitizen to reside permanently in the United States in the future; employment history; record of appearance in court; criminal record, including the extensiveness, recency, and seriousness of the offenses; history of immigration violations; attempts to flee prosecution or escape authorities; and manner of entry. Martinez v. Clark, 124 F.4th 775, 783 (9th Cir. 2024).

93. A federal court reviewing a custody determination "cannot reweigh evidence" but "can determine whether the [agency] applied the correct legal standard," including whether it "properly considered the [detention] factors set forth in" Guerra. Martinez, 124 F.4th at 785.

94. An agency "acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision." Nat. Res. Def. Council v. Pritzker, 828 F.3d 1125, 1135 (9th Cir. 2016).

95. A court will "take the [agency] at its word" that it applied the correct standard only "in the absence of any red flags." Martinez, 124 F.4th at 785–86. Where the adjudicator "fail[s] to mention highly probative or potentially dispositive evidence" or "misstates the record," that is legal error, even where the decision contains a "catchall phrase" asserting that the whole record was reviewed. Id. at 786.

96. Where an Immigration Judge finds that a noncitizen is not a danger, the Judge should determine the amount of bond necessary to ensure the noncitizen's appearance. Matter of Urena, 25 I. & N. Dec. 140 (BIA 2009). Alternatives to detention are highly effective at securing appearance: the Intensive Supervision Appearance Program "resulted in a 99% attendance rate at

all EOIR hearings and a 95% attendance rate at final hearings." Hernandez v. Sessions, 872 F.3d 976, 991 (9th Cir. 2017).

## VIII. CLAIMS FOR RELIEF

**COUNT ONE: Violation of the Fifth Amendment Right to Due Process: Misallocation and Misapplication of the Burden of Proof**

97. Petitioner incorporates the preceding paragraphs as though fully set forth here.

98. It is undisputed that DHS bore the burden at the July 20, 2026 hearing of proving by clear and convincing evidence that Petitioner should remain detained. The Immigration Judge's written order says so.

99. Rodriguez Diaz v. Garland does not bear on this claim. The question there was whether a noncitizen detained under 8 U.S.C. § 1226(a) was constitutionally entitled to a further bond hearing at which the government carried the burden; the Ninth Circuit held that, "[n]othing in this record suggests that placing the burden of proof on the government was constitutionally necessary to minimize the risk of error." 53 F.4th at 1210–11. Here the government was assigned that burden as a matter of course, and Petitioner does not ask this Court to impose it. Petitioner's claim is that the burden, once assigned, was not honored.

100. DHS introduced no affirmative evidence directed to that burden. Its submission consisted of a copy of its filing from the May hearing, at which the burden had rested on Petitioner. Its counsel stated that she had not prepared to examine Petitioner. She asked the Court to import a finding made under the opposite burden allocation.

101. The Immigration Judge recognized the deficiency and stated it on the record: DHS's "arguments alone are arguments and not facts," and she did not "see how the department can meet their burden without asking the respondent questions."

102. The Immigration Judge then supplied the missing evidence herself. She directed DHS to question Petitioner and, when that failed to develop the record, conducted the examination personally. Every fact underlying the flight-risk finding (residence, employment, taxes, release address, and sponsor) was elicited by the Court, not by the party bearing the burden.

103. Petitioner does not contend that an Immigration Judge may never question a respondent. He contends that where the adjudicator expressly identifies a failure of proof by the burdened party and then remedies that failure through her own examination, the burden has been reallocated in substance whatever the order recites.

104. The oral decision confirms the reallocation. The Immigration Judge framed the dispositive question as whether she was persuaded that Petitioner would appear: “I don’t believe or I am not persuaded that you would be.” That is a finding that Petitioner failed to persuade. It is not a finding that DHS proved, by evidence, that Petitioner would abscond. The appended sentence, “and I am finding the department has met its burden,” is precisely the “lip service” that Pritzker forbids. 828 F.3d at 1135.

105. The Rodriguez supplement that accompanied the notice of this hearing states the required showing in terms that make the inversion plain. The government was required to show that Petitioner “is not likely to appear for future immigration hearings or for removal.” The Immigration Judge instead found that she was not persuaded he would appear. Those are not the same finding. The first requires affirmative proof by the Department; the second requires persuasion by Petitioner.

106. The written order confirms it again. Its concluding sentence weighs whether “the negative equities in this case outweigh the positive equities in this case.” Equitable balancing is not proof by clear and convincing evidence. The government does not carry a clear and convincing burden by accumulating more negative equities than positive ones.

107. The asymmetry within this single decision is itself a red flag under Martinez. On dangerousness, the Immigration Judge demanded corroborating evidence from DHS, found it absent, and ruled for Petitioner. On flight risk, on the same record and with the same absence of government evidence, she demanded persuasion from Petitioner. The same adjudicator applied two different burdens to two prongs of the same standard in the same hearing.

108. The Immigration Judge's treatment of the sponsor evidence is a third instance of the same error. She assigned Petitioner's letter of support "minimal weight" and then treated that weakness as a reason to conclude that the Department had carried its burden. But at a hearing where the government bears the burden of proof, discounting the respondent's evidence does not generate government proof; it leaves the record empty. A thin letter of support is not affirmative evidence that a person will abscond. It is, at most, an absence of evidence that he will not, and that absence is significant only if the burden rests on him. Mukulumbutu v. Barr, on which the order relies, illustrates the point: there the applicant bore the burden, so discounting his corroboration defeated his claim. 977 F.3d 924, 927 (9th Cir. 2020). Here, discounting Petitioner's corroboration returned the Department to where it began, with a copy of its own filing from the May hearing.

109. The same inversion explains what the Immigration Judge did not do. She questioned Petitioner at length about his residence, his employment, his tax filings, and his proposed release address. She never asked him about the letter, and she never put to him the discrepancy the Department raised after the examination had closed. Had the burden rested where the order says it rested, the party obliged to develop that subject was the Department.

110. This misallocation prejudiced Petitioner. Had the burden been applied as the Constitution requires, DHS could not have prevailed: it offered no evidence. See Rajnish v. Jennings, 2020 WL 7626414, at *8 (N.D. Cal. 2020) (unconstitutional burden-shifting plausibly prejudiced noncitizen).

111. Petitioner's continued detention pursuant to a hearing at which the burden was misallocated violates the Due Process Clause of the Fifth Amendment.

**COUNT TWO: Violation of the Fifth Amendment Right to Due Process and Legal Error: Findings Unsupported by and Contrary to the Record**

112. Petitioner incorporates the preceding paragraphs as though fully set forth here.

113. The Immigration Judge misstated Petitioner's testimony. She found, "[i]n your own words, you stated that you don't have a stable, uh, employment history for the last three years." Petitioner testified to two years. A finding that misstates the record is legal error. Martinez, 124 F.4th at 786.

114. The written order faults Petitioner because his "sponsor was not available for cross examination," citing Mukulumbutu v. Barr, 977 F.3d 924, 927 (9th Cir. 2020). The Department never asked to cross-examine the author of the letter. The Immigration Judge nonetheless held the absence of cross-examination against Petitioner, at a hearing where Petitioner's evidence was not required to persuade anyone, and where the party entitled to seek cross-examination had not sought it.

115. The Immigration Judge discounted Petitioner's three United States citizen children on the ground that they "can[not] help you derive status." That reasoning misapprehends the third Guerra factor, which asks about family ties and whether they "may entitle the [noncitizen] to reside permanently in the United States in the future." Guerra, 24 I. & N. Dec. at 40. Petitioner's children are the relatives on whom his pending application for cancellation of removal depends. 8 U.S.C. § 1229b(b)(1)(D). Whatever that application's ultimate merits, it is the reason he has a proceeding worth attending.

116. The Immigration Judge did not address Petitioner's central argument, squarely presented by counsel, that cancellation of removal is available only in immigration court, and that Petitioner therefore has a powerful affirmative incentive to appear. The fifth Guerra factor is

the noncitizen's record of appearance in court. Petitioner has never failed to appear at a proceeding of which he had notice; the sole in absentia order was entered when he was thirteen and has been rescinded.

117. The written order relies on Petitioner's asserted failure to "fully appreciate[]" his 2018 conviction. That reliance is unsustainable for three reasons. First, the Immigration Judge had orally found DHS's evidence on that same conviction insufficient for want of any arrest or police report. Second, Petitioner testified that he had blacked out, that he was told what occurred, that he pled guilty, and, when asked directly, that he had committed wrongdoing and that "it was a mistake." Third, the conviction is eight years old, arose from a single incident, was followed by complete compliance with 52 domestic violence classes, alcohol classes completed early, and five years of probation, and has been followed by eight years without any law-enforcement contact. The sixth Guerra factor asks about extensiveness, recency, and seriousness. The Immigration Judge's treatment addresses none of them. As the Ninth Circuit held in Singh, "criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness. Rather, the recency and severity of the offenses must be considered." 638 F.3d at 1206. That is so even where criminal history is most probative, in the dangerousness analysis. It applies with greater force where, as here, a conviction the Immigration Judge found insufficient to prove dangerousness was imported into the flight-risk analysis instead.

118. The written order relies on Petitioner's unauthorized employment as evidence of disregard for "this countries immigration laws." Petitioner testified that he worked without authorization because "my kids still need to eat." Unauthorized employment is a near-universal characteristic of the population detained under § 1226(a) and performs no individualized work in assessing flight risk. Counsel further explained, without contradiction, that Petitioner's filed application for cancellation of removal renders him eligible for employment authorization under 8 C.F.R. § 274a.12(c)(10). The order does not address that fact.

119. Finally, the only documentary evidence DHS ever placed before the immigration court bearing on Petitioner's history was a Form I-213, an FBI rap sheet, and a PCIS report. The Form I-213 places Petitioner's entry on April 4, 2007, more than nineteen years of continuous residence in the United States. Long residence is evidence of attachment to a community; it is not evidence of a propensity to abscond, and it cannot carry a clear and convincing showing of flight risk.

120. These are "red flags" within the meaning of Martinez, 124 F.4th at 785–86. Individually and cumulatively, they establish that the agency did not apply the correct legal standard and did not properly consider the Guerra factors. This is legal error reviewable de novo. Id.

**COUNT THREE: Violation of the Fifth Amendment Right to Due Process: Failure to Consider Alternatives to Detention**

121. Petitioner incorporates the preceding paragraphs as though fully set forth here.

122. The Immigration Judge expressly found that DHS failed to prove that Petitioner is a danger to the community. Bond was denied on flight risk alone.

123. Where an Immigration Judge finds that a noncitizen is not a danger, the Judge should determine the amount of bond necessary to secure the noncitizen's appearance. Matter of Urena, 25 I. & N. Dec. 140 (BIA 2009). Martinez v. Clark held only that alternatives to detention need not be considered when bond is denied on dangerousness grounds. 124 F.4th at 786. That holding does not reach this case.

124. The record contains no consideration of alternatives to detention. No party mentioned GPS monitoring, the Intensive Supervision Appearance Program, telephonic or in-person reporting, or any other condition of supervision. The Immigration Judge conducted no inquiry into Petitioner's or any sponsor's ability to pay a bond in any amount.

125. The conclusion that "no amount of bond or conditions would secure your future court appearance" is recited without analysis. The instability the Immigration Judge identified (in residence, in employment, and in the sponsor arrangement) is precisely the category of concern that supervision conditions exist to address. Nothing in the decision explains why supervision would not answer it.

126. Alternatives to detention are effective. ISAP "resulted in a 99% attendance rate at all EOIR hearings and a 95% attendance rate at final hearings." Hernandez v. Sessions, 872 F.3d at 991. And where bond is set, it must be reasonable and appropriate in the circumstances; "serious questions may arise concerning the reasonableness of the amount of the bond if it has the effect of preventing an alien's release." Doan v. INS, 311 F.3d 1160, 1162 (9th Cir. 2002). The government's interest in securing Petitioner's appearance is served by supervision at materially lower cost than detention.

127. The failure to consider whether conditions short of detention would secure Petitioner's appearance, where he was found not to be a danger, violated due process.

128. Independently, the Rodriguez supplement served with the notice of this hearing told Petitioner in terms that alternatives would be considered: "The Immigration Judge will consider alternatives to detention, such as supervised release and electronic monitoring, in determining whether you can be released." That representation was made by the agency, in the document that set the hearing, and it was admitted as Exhibit 2. No alternative to detention was mentioned by anyone at any point in the hearing, and the written order contains no analysis of any.

129. Because the agency's own notice placed alternatives to detention within the scope of the hearing, the question was before the Immigration Court irrespective of whether counsel pressed it. Cf. Cabrera Espinoza v. Becerra, 720 F. Supp. 3d 776, 779 (N.D. Cal. 2024).

## IX. THE APPROPRIATE REMEDY IS RELEASE

130. Petitioner incorporates the preceding paragraphs as though fully set forth here.

131. "Habeas is at its core a remedy for unlawful executive detention," and "[t]he typical remedy for such detention is, of course, release." Munaf v. Geren, 553 U.S. 674, 693 (2008).

132. District courts in this Circuit have ordered immediate release where an Immigration Judge's custody determination was legally or constitutionally inadequate and the government identified no other lawful basis for detention. See Minango v. Bondi, No. 2:26-cv-00235-ART-BNW (D. Nev. May 6, 2026); Miri v. Bondi, No. 5:26-cv-00698-MEMF-MAR, 2026 WL 622302, at *12 (C.D. Cal. Mar. 5, 2026) (ordering immediate release after finding the Immigration Judge abused his discretion in denying bond); Soriano v. Hernandez, No. 2:26-cv-00900-DGE, 2026 WL 969764, at *6 (W.D. Wash. Apr. 10, 2026); W.T.M. v. Bondi, No. 2:25-cv-02428-RAJ-BAT, 2026 WL 262583, at *5 (W.D. Wash. Jan. 30, 2026).

133. Petitioner does not contend that the length of his detention, standing alone, entitles him to release. The six-month threshold recognized in Diouf v. Napolitano, 634 F.3d 1081, 1091–92 & n.13 (9th Cir. 2011), and Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), is what shifted the burden of proof to the government. That entitlement has already been recognized: it is why the July 20, 2026 hearing was held under the clear and convincing evidence standard.

134. The length of Petitioner's detention bears on the remedy. Petitioner has been detained 218 days and has received two custody hearings. At the first, on May 12, 2026, the burden was placed on him. At the second, on July 20, 2026, the burden was nominally on the government, which submitted no evidence, presented no witness, and argued from a copy of its own filing from the earlier hearing. Petitioner has never received a custody determination in which the government was actually required to prove anything.

135. A third remand to the same immigration court is not, on this record, a meaningful remedy. It would return Petitioner to a forum that has twice denied him bond, on an evidentiary record the government has twice declined to build, while he remains detained for the weeks the process consumes. Where the government has had two opportunities to carry its burden and has not attempted to, the appropriate remedy is release.

136. Under Mathews v. Eldridge, 424 U.S. 319, 335 (1976), Petitioner's private interest, freedom from physical restraint, is at its zenith after 218 days of confinement. See Foucha v. Louisiana, 504 U.S. 71, 80 (1992). The government's countervailing interest is in securing his appearance, an interest that supervision serves at 99% effectiveness and materially lower cost. Hernandez v. Sessions, 872 F.3d 976, 991 (9th Cir. 2017). The balance does not support continued detention.

137. To the extent Respondents contend that the duration of Petitioner's detention is attributable to his own litigation, the record refutes it. Petitioner was detained on the erroneous premise that he was subject to a final order of removal and mandatory detention under 8 U.S.C. § 1231. Correcting that error required a motion to reopen, a habeas petition, and a judgment of this Court. Respondents then transferred Petitioner to Arizona in violation of this Court's temporary restraining order, where he was held four days without access to counsel. Petitioner's good-faith pursuit of the relief to which he is entitled, including an application for cancellation of removal available only in immigration court, cannot be counted against him.

138. Should the Court decline to order release, Petitioner requests in the alternative a new bond hearing before a different Immigration Judge, on an expedited schedule, at which the government bears the burden by clear and convincing evidence, the Immigration Judge considers ability to pay and alternative conditions of supervision, and any adverse factual finding is put to Petitioner with an opportunity to respond.

## X. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

139. Assume jurisdiction over this matter;

140. Issue an order to show cause requiring Respondents to justify Petitioner's detention forthwith, pursuant to 28 U.S.C. § 2243;

141. Issue a writ of habeas corpus ordering Respondents to release Petitioner from custody immediately, on his own recognizance or on such reasonable conditions of supervision as the Court deems appropriate;

142. In the alternative, issue a writ of habeas corpus ordering Respondents to provide Petitioner with a new bond hearing within seven (7) days, before a different Immigration Judge, at which (a) the government bears the burden of proof by clear and convincing evidence, (b) the Immigration Judge considers Petitioner's ability to pay and the availability of alternative conditions of supervision, and (c) any adverse factual finding is put to Petitioner with an opportunity to respond;

143. Declare that Petitioner's continued detention violates the Fifth Amendment to the United States Constitution and the Immigration and Nationality Act;

144. Award Petitioner reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

145. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 17th day of August, 2026.

/s/ Alejandro Barajas

ALEJANDRO BARAJAS
CA Bar No. 305870
Law Office of Alejandro Barajas
1930 Wilshire Blvd, Suite 1207
Los Angeles, CA 90057
(323) 522-4188
alejandro@barajaslawoffice.com
Attorney for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, Sergio Salvador Salazar Sorto, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition are true and correct to the best of my knowledge, based on a review of the records of the Immigration Court, the digital audio recording of the July 20, 2026 custody redetermination hearing, the records of this Court in Case No. 5:26-cv-00418-HDV-KES, and communications with my client.

Executed this 17th day of August, 2026, at Los Angeles, California.

/s/ Alejandro Barajas
______________________________
ALEJANDRO BARAJAS
Attorney for Petitioner