UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO SALAZAR-SORTO,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, et al.,<br>Respondents. | Case No. 5:26-cv-04690-KES<br><br>ORDER GRANTING THE PETITION, ORDERING PETITIONER'S RELEASE FROM CUSTODY, AND REQUIRING SUPPLEMENTAL BRIEFING |

## I. INTRODUCTION

Sergio Salazar-Sorto ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). Respondents have answered the Petition ("Answer" at Dkt. 11), and Petitioner has replied ("Reply" at Dkt. 12). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 10.)

The Petition is granted and Respondents are directed to immediately release Petitioner from custody. To promote efficiency, the parties are also directed to provide further briefing on the issue of whether Petitioner is entitled to prospective

injunctive relief.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Entry into the U.S., Release and *In Absentia* Removal Order (2007-2008).

Petitioner was born in El Salvador on July 28, 1994. (Pet. at 9, ¶ 32.) He entered the United States on or about April 4, 2007, when he was twelve years old. (Pet. at 9, ¶ 32.) He has lived here continuously since and has never departed the United States. (Pet. at 9, ¶ 32.)

Petitioner was encountered by immigration authorities near Phoenix, Arizona in 2007, shortly after his entry and when he was still a minor. (Pet. at 9, ¶ 33.) Removal proceedings were initiated against him, but he was released from custody. (Pet. at 9, ¶ 33.)

On May 19, 2008, an in absentia order of removal was entered against him when he was thirteen years old. (Pet. at 10, ¶ 42.) He received no notice of the hearing and had no knowledge of the proceedings. (Pet. at 10, ¶ 42.)

### B. DACA Grant and Family Ties in the U.S.

At some point, Petitioner was granted protected status under the Deferred Action for Childhood Arrivals ("DACA") program. (Pet. at 9, ¶ 34.) His DACA status later expired. (Pet. at 9, ¶ 34.) He applied twice to renew it and was not granted renewal; he was never told why. (Pet. at 9, ¶ 34.)

Petitioner is the father of three United States citizen children (ages 10, 5, and 3), and the children's mother is a United States citizen. (Pet. at 9, ¶ 35.) Before his detention, Petitioner saw his children daily and was responsible for their care after school. (Pet. at 9, ¶ 36.) Petitioner's extended family in the United States includes his mother, a brother, aunts, uncles, and cousins, several of whom are United States citizens or lawful permanent residents; substantially all of his family lives in the United States. (Pet. at 9, ¶ 37.)

**C. Conviction for Domestic Violence (2018).**

On July 12, 2018, Petitioner was convicted of violating California Penal Code § 236 (false imprisonment) and § 243(e)(1) (domestic battery). (Pet. at 9, ¶ 38.) Both charges arose from the same incident. (Pet. at 9, ¶ 38.) He served 89 days in jail and was then placed on five years' probation, which he completed in or about 2023. (Pet. at 9, ¶ 38.)[1] This is the only time Petitioner has been arrested. (Pet. at 10, ¶ 40.)

**D. Current Detention by ICE (January 12, 2026).**

On January 12, 2026, Petitioner was arrested by ICE agents at the Long Beach Airport, where he had cleared security and was waiting to board a flight. (Pet. at 11, ¶ 48.) Approximately six agents surrounded him. (Pet. at 11, ¶ 48.) He was shown an ICE badge and told that he had a deportation order because his DACA had expired. (Pet. at 11, ¶ 48.) He was handcuffed, removed from the airport, and taken into ICE custody. (Pet. at 11, ¶ 48.)

**E. Prior Habeas Petition and Reopening of Removal Case (January-May 2026).**

On January 30, 2026, Petitioner filed a counseled habeas petition in this Court. Salazar-Sorto v. Warden, Adelanto Ice Processing Center, No. 5:26-cv-00418-HDB-KES (C.D. Cal.) ("Salazar I").[2] The Court dismissed the initial

---

[1] Petitioner states that he complied with orders to complete classes in domestic violence and alcohol use, and that he has not consumed alcohol since the incident. (Pet. at 10, ¶ 39.)

[2] The same day, the Court issued a temporary restraining order ("TRO") enjoining immigration authorities from transferring Petitioner outside of the Central District of California. Salazar I, Dkt. 5. Petitioner alleges that, notwithstanding the TRO, Respondents transferred him to a facility in Florence, Arizona on March 19, 2026. (Pet. at 11, ¶ 52.) He was held there approximately four days, during which he was "denied contact with counsel" and "housed in a unit holding roughly fifty men in a space designed for twenty-five." (Pet. at 11-12, ¶ 52.) Petitioner alleges that the "transfer was halted … after counsel intervened."

petition with leave to amend, and Petitioner filed a first amended petition. Id., Dkt. 13, 14.

On February 26, 2026, Petitioner moved the immigration court to reopen his removal case. (Pet. at 10, ¶ 43.) On March 11, 2026, an immigration judge ("IJ") granted the motion to reopen and rescinded the 2008 in absentia removal order, citing "substantial new facts and equities" and Petitioner's "demonstrated interest in continuing to pursue his legal status." (Pet. at 10, ¶ 44.) Petitioner then applied for cancellation of removal under 8 U.S.C. § 1229b(b)(1). (Pet. at 10 ¶ 46.) That application remains pending. (Pet. at 10-11, ¶¶ 46-47.) He currently has a hearing scheduled in immigration court for September 16, 2026. See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 094-946-631 (El Salvador), last accessed Sept. 3, 2026).

Meanwhile, in federal court, the government declined to oppose the first amended petition in Salazar I, admitting that Petitioner was entitled to a bond hearing. Salazar I, Dkt. 16. On May 5, 2026, the Court granted Petitioner's first amended petition and enjoined Respondents from continuing to detain Petitioner unless he was provided with an individualized bond hearing in immigration court pursuant to 8 U.S.C. § 1226(a) within seven days. Salazar, Dkt. 18.[3]

**F. First Bond Hearing (May 12, 2026).**

On May 12, 2026, Petitioner had a bond hearing before an immigration

---

(Pet. at 12, 52.) Petitioner's counsel did not seek any relief from this Court based on this violation of the Court's TRO. At some point, Petitioner was transferred back to Adelanto, where he is currently detained.

[3] The Court dismissed the initial petition because, at that time, Petitioner's motion to reopen his removal case was still pending, and it was unclear whether Petitioner's detention was governed by 8 U.S.C. § 1231 or § 1226(a). Salazar I, Dkt. 13 at 3-4. By the time the Court's final order was issued, Petitioner's immigration case had been reopened, making § 1226(a) applicable.

judge ("IJ"). Salazar I, Dkt. 19-1 (copy of IJ's bond decision, attached to joint status report). The IJ denied bond, finding that Petitioner was both a danger to the community and a flight risk. Id.

**G. Second Bond Hearing (July 20, 2026).**

On July 20, 2026, after Petitioner had been in custody for more than six months, he had a Rodriguez bond hearing before an IJ.[4] (Pet. at 13, ¶ 59.) The IJ found that the government had not met its burden of proving Petitioner was a danger to the community, but the IJ denied bond based on flight risk. (Pet. at 15-17, ¶¶ 75-85; see also Pet. Ex. B / Dkt. 1-1 at 13-27 (transcript of hearing); Pet. Ex. D / Dkt. 1-1 at 32-33 (IJ's written order).)

Petitioner reserved his right to appeal the IJ's order to the Board of Immigration Appeals ("BIA"), but he ultimately decided not to appeal. (Pet. at 6, ¶ 23.)

He remains in ICE custody and has been continuously detained since January 12, 2026. (Pet. at 11, ¶ 50); ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 094-946-631 (El Salvador), last accessed Sept. 3, 2026).

**H. Current Habeas Proceedings.**

Petitioner filed the current Petition in this Court on August 18, 2026. (Dkt. 1.) The Petition challenges the result of the July 20, 2026 bond hearing, raising the

---

[4] "Named after the Ninth Circuit's decision in Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015), which has an extensive history that need not be recounted here, a Rodriguez bond hearing is a periodic custody redetermination proceeding—required in the Central District of California (for reasons not pertinent here)—where the government must show at six-month intervals that a detainee's continued detention pending removal proceedings is justified by clear and convincing evidence of flight risk or danger to the community." Penaloza Monsalve v. Semaia, No. 26-cv-00463-SVW-ACCV, 2026 WL 1625352, at *1 n.1 2026 U.S. Dist. LEXIS 121961, at *2 n.1 (C.D. Cal. June 1, 2026).

following claims:

Ground 1: "Violation of the Fifth Amendment Right to Due Process: Misallocation and Misapplication of the Burden of Proof": Even though the IJ stated that the government bore the burden of proof, the IJ's ruling is inconsistent with this statement because (a) "DHS introduced no affirmative evidence"; (b) the IJ "supplied the missing evidence" by personally examining Petitioner after DHS declined to do so; and (c) the IJ's oral and written decisions appear to place the burden of persuasion on Petitioner, rather than the government. (Pet. at 20-23, ¶¶ 97-111.)

Ground 2: "Violation of the Fifth Amendment Right to Due Process and Legal Error: Findings Unsupported by and Contrary to the Record": the IJ (a) "misstated Petitioner's testimony"; (b) improperly faulted Petitioner for not producing his sponsor at the hearing, even though DHS "never asked to cross-examine" the sponsor; (c) "misapprehend[ed] the third Guerra factor"[5] by "discount[ing] Petitioner's three United States-citizen children on the ground that they 'can[not] help [him] derive status'"; (d) did not address Petitioner's argument that he had "a powerful affirmative incentive to appear" to pursue his cancellation-of-removal application in immigration court; (e) relied on "Petitioner's failure to 'fully appreciate[]' his 2018 conviction" even though there was insufficient evidence about that conviction before the IJ and the conviction is not strong evidence of dangerousness under Guerra[6]; (f) relied on "Petitioner's unauthorized

---

[5] Matter of Guerra, 24 I. & N. Dec. 37 (B.I.A. 2006) lists the factors IJs consider in making bond determinations. The third Guerra factor is the noncitizen's "family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future." In Re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006).

[6] The IJ found that DHS had not "met their burden to establish that" Petitioner was "a danger to the community" because, DHS did not present "any arrest reports or police reports to corroborate the details of the events that occurred

employment" even though this is "a near-universal characteristic of the population detained under § 1226(a)"; and (g) failed to address Petitioner's long residence in the United States. (Pet. at 23-25, ¶¶ 112-20.)

Ground 3: "Violation of the Fifth Amendment Right to Due Process: Failure to Consider Alternatives to Detention": "The record contains no consideration of alternatives to detention. No party mentioned GPS monitoring, the Intensive Supervision Appearance Program, telephonic or in-person reporting, or any other condition of supervision. The [IJ] conducted no inquiry into Petitioner's or any sponsor's ability to pay a bond in any amount. … The conclusion that "no amount of bond or conditions would secure your future court appearance" is recited without analysis." (Pet. at 25-26, ¶¶ 121-29.)

Petitioner argues that release, rather than a new bond hearing, is the appropriate remedy. (Pet. at 27-28, ¶¶ 132-38; id. at 29, ¶¶ 141-42.)

On August 19, 2026, the Court issued its Standing Order for § 2241 Immigration Petitions, which states in relevant part, "**Failing to file an answer by the due date—or filing an answer that fails to substantively respond to any claim in the petition—may result in the Court granting the petition or claim as unopposed.**" (Dkt. 8 at 1-2) (emphasis in original).

Respondents answered the Petition on August 28, 2026. (Answer at 1.) They argue that the Court should deny the Petition because Petitioner failed to exhaust his administrative remedies by appealing the IJ's July 2026 bond order to the BIA. (Id.) The Answer does not contain any argument regarding the merits of Petitioner's claims.

Petitioner replied on August 28, 2026. (Reply at 1.) He argues that exhaustion "prudential, not statutory," and appealing to the BIA "is not an

---

in 2018," i.e., "approximately eight years ago." (Pet. Ex. B / Dkt. 1-1 at 26 (IJ hearing transcript).)

adequate remedy." (Id. at 2-3; see also Pet. at 6, ¶¶ 21-26 (admitting lack of exhaustion and arguing it should be excused).) He also argues that the Court should grant the Petition based on Respondents' failure to address the merits of his claims. (Reply at 3 ("A response that declines to engage an argument concedes it.").)

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies is Excused.

#### 1. Legal Standard.

Where a petitioner denied bond under § 1226(a) does not exhaust his administrative remedies by appealing to the BIA, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011). However, in this context, the exhaustion requirement is prudential, rather than jurisdictional. Courts deciding whether to require prudential exhaustion generally consider what are known as the Puga factors, which consider whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (quoting Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007)).

"Nonetheless, even if the three Puga factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or

the administrative proceedings would be void." Hernandez, 872 F.3d at 988 (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

"Exhaustion is futile where continuing administrative proceedings 'would clearly be of no avail,' Fones4All Corp. v. FCC, 550 F.3d 811, 818 (9th Cir. 2008), where there is 'certainty of an adverse decision,' Agua Caliente Tribe of Cupeño Indians of Pala Reservation v. Sweeney, 932 F.3d 1207, 1219 (9th Cir. 2019), or where there is 'undisputed evidence of administrative bias,' White Mountain [Apache Tribe v. Hodel], 840 F.2d [675,] 677 [9th Cir. 1988]." Winnemucca Indian Colony v. U.S. ex rel. Dep't of the Interior, 819 F. App'x 480, 482 (9th Cir. 2020).

**2. Parties' Arguments.**

The Petition argues that exhaustion should be excused for several reasons. First, he argues:

> The agency has now made two custody determinations on materially the same record and reached the same result under opposite burdens of proof. On May 12, 2026, the Immigration Court denied bond with the burden on Petitioner. On July 22, 2026, it denied bond again with the burden on [DHS] by clear and convincing evidence, on a record to which [DHS] added no evidence at all, and at which the [IJ] stated that [DHS's] "arguments alone are arguments and not facts."

(Pet. at 6-7, ¶ 24.) Second, he argues that awaiting the outcome of such an appeal would lead to irreparable injury because he has already been detained for 218 days. (Pet. at 7, ¶ 25.) Third, he argues that any BIA appeal would not be "efficacious" because "the Board does not routinely transcribe bond hearings, does so only 'at the discretion of the Board,' and will not delay its briefing scheduled to await transcript"[7]; he argues that such transcription is necessary because the errors he

[7] Petitioner admits that the BIA does have the digital audio recording

alleges "appear principally in the oral record and in the divergence between the oral and written decisions." (Pet. at 7, ¶ 26.)

Respondents argue that the three Puga factors weigh in favor of requiring exhaustion because: (1) the "BIA has subject matter expertise in reviewing individual immigration bond decisions, the authority to review IJ's bond decisions, and, if necessary, can generate a more complete factual record for review"; (2) "relaxing the exhaustion requirements in this case would encourage others to immediately seek habeas review if they deem the federal courts to be a more sympathetic forum"; and (3) the "BIA has the authority to correct any erroneous factual determinations and evidentiary errors" under 8 C.F.R. § 1003.1(d)(3)(i)-(ii). (Answer at 3.) Finally, they argue, "That Petitioner remains in custody following his bond hearing [potentially for a year or more] is not irreparable harm that excuses exhaustion." (Id.)

In his Reply, Petitioner argues, "The claim pleaded here is not that the [IJ] made an erroneous factual finding. It is that she recited a constitutional burden of proof and then decided the case under a different one. That is a question of law…." (Reply at 10.)

**3. Analysis.**

Consideration of the Puga factors weighs against requiring prudential exhaustion in this case. Comparison with the district court case cited in Respondents' Answer, Martinez v. Scott, No. 25-cv-1538, 2025 WL 2689844 (W.D. Wash. Aug. 27, 2025), report & recommendation adopted, 2025 WL 2689066 (W.D. Wash. Sept. 19, 2025), is instructive.

When considering the first Puga factor, the district court in Martinez found that the IJ had not issued a written decision explaining why they denied bond. The court concluded that, if the petitioner appealed, "the BIA would expand the

---

available, even if the transcript is not. (Reply at 9.)

available record by requiring the IJ to provide a written decision fully explaining why Petitioner was denied bond." Martinez, 2025 WL 2689844, at *5. Here, in contrast, this Court has both a transcript of the July 2026 bond hearing and a written decision from the IJ. (Pet. Ex. B / Dkt. 1-1 at 13-27 (transcript of hearing); Pet. Ex. D / Dkt. 1-1 at 32-33 (IJ's written order).)

In considering the second Puga factor, the Martinez decision distinguished the petitioner's "fact-intensive" arguments from "purely legal" questions, finding that the latter might "answer a recurring legal question thereby reducing the number of future habeas filings," while claims like Petitioner's would only "resolve the question of whether Petitioner—and Petitioner alone—is entitled to bond as a matter of constitutional law." Martinez, 2025 WL 2689844, at *5. Here, although Petitioner's claims are fact-intensive, he raises a number of legal issues that could reoccur. These include: (a) whether it is proper for an IJ to develop the factual record by questioning the detainee at a hearing where DHS (rather than the detainee) is supposed to bear the burden of proof; and (b) whether an IJ is required to consider alternatives to detention before denying bond, particularly if the IJ's main conclusion is flight risk.

Finally, the Martinez decision found that the petitioner had not presented evidence of "individualized" irreparable harm, distinguishing cases where petitioners had alleged that their detention worsened their health issues, prevented them from defending an ongoing criminal prosecution, or "interfere[d] with her ability … to care for her 9-year-old daughter." Martinez, 2025 WL 2689844, at *6. The last example is precisely the type of irreparable harm Petitioner alleges in this case. The Petition alleges:

> Petitioner is the father of three United States citizen children, ages 10, 5, and 3. The children's mother is a United States citizen. … Before his detention, Petitioner saw his children daily and was responsible for their care from school. Since his detention, the children have

> been upset and withdrawn, have asked repeatedly when he is coming home, and have had behavioral difficulties at school. The children have visited Petitioner at Adelanto three times, brought by their mother.

(Pet. at 9, ¶¶ 35-36.)

Accordingly, at least two of the Puga factors weigh in favor of waiving the administrative exhaustion requirement, and Petitioner has demonstrated irreparable harm under Laing and Hernandez. The exhaustion requirement is therefore waived.

**B. Petitioner is Entitled to Relief.**

As noted above, Respondents' Answer fails to present any argument on the merits of Petitioner's claims. Before the Answer was filed, the Court expressly warned Respondents that a failure to "substantively respond to any claim in the petition" might "result in the court granting the petition or claim as unopposed." (Dkt. 8 at 1-2.) Accordingly, based on this lack of opposition and the legal authorities cited in the Petition, the Petition is granted.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that:

1. The Petition is granted.[8]
2. Respondents shall **immediately release** Sergio Salazar-Sorto (A# 094-946-631) from custody.
3. If Respondents have not released Petitioner **within three (3) days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.

---

[8] To the extent the Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).

4. Within **fourteen (14) days** of this order, Petitioner shall file a supplemental brief addressing whether Petitioner is also entitled to prospective injunctive relief preventing his re-detention without a pre-deprivation hearing as a matter of due process, given that he is a former DACA recipient who has lived in the U.S. for many years. See generally Anderson v. Chernut, No. 26-cv-01960-DAD-CKD, 2026 WL 809990, at *2, 2026 U.S. Dist. LEXIS 62410, at *4 (E.D. Cal. Mar. 24, 2026) (reasoning that "the government's *knowing* decision not to detain an individual creates a liberty interest in their continued release"); Hernandez v. Warden, Golden State Annex Det. Facility, No. 26-cv-3727, 2026 WL 1759597, at *2-3, 2026 U.S. Dist. LEXIS 136216, at *3-6 (E.D. Cal. June 18, 2026) (finding that district courts have "'overwhelmingly found' that a noncitizen with active deferred action status [under DACA] has a protected liberty interest under the Due Process Clause" and that the "expiration of petitioner DACA status does not eliminate his vested protected liberty interest" where the government has not "terminated" his status), R&R adopted in part, rejected in part, 2026 WL 2099232 (E.D. Cal. July 21, 2026). If Petitioner argues that he is entitled to this relief, the Court will give Respondents an opportunity to respond.

DATED: September 4, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE