UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO SALAZAR-SORTO,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, et al.,<br>Respondents. | Case No. 5:26-cv-04690-KES<br><br>ORDER GRANTING PROSPECTIVE INJUNCTIVE RELIEF |

## I. INTRODUCTION

Sergio Salazar-Sorto ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). Respondents answered the Petition ("Answer" at Dkt. 11), and Petitioner replied ("Reply" at Dkt. 12). The parties consented to the jurisdiction of the Magistrate Judge. (Dkt. 10.)

On September 4, 2026, the Court granted the Petition and ordered Petitioner's release from custody. (Dkt. 13.) The Court also ordered, "Within **fourteen (14) days** of this order, Petitioner shall file a supplemental brief

addressing whether Petitioner is also entitled to prospective injunctive relief preventing his re-detention without a pre-deprivation hearing as a matter of due process, given that he is a former DACA [i.e., Deferred Action for Childhood Arrivals] recipient who has lived in the U.S. for many years. … If Petitioner argues that he is entitled to this relief, the Court will give Respondents an opportunity to respond." (Dkt. 13 at 13.)

On September 18, 2026, Petitioner filed a supplemental brief arguing that he was entitled to such relief. (Dkt. 14.) The Court therefore gave Respondents an opportunity to respond. (Dkt. 15.) On September 28, 2026, they filed a supplemental brief. (Dkt. 16.)

For the reasons stated below, Petitioner is granted prospective injunctive relief preventing his re-detention without a pre-deprivation hearing as a matter of due process.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Entry into the U.S., Release, and *In Absentia* Removal Order (2007-2008).

Petitioner was born in El Salvador on July 28, 1994. (Pet. at 9, ¶ 32.) He entered the United States on or about April 4, 2007, when he was twelve years old. (Pet. at 9, ¶ 32.) He has lived here continuously since and has never departed the United States. (Pet. at 9, ¶ 32.)

Petitioner was encountered by immigration authorities near Phoenix, Arizona in 2007, shortly after his entry and when he was still a minor. (Pet. at 9, ¶ 33.) Removal proceedings were initiated against him, but he was released from custody. (Pet. at 9, ¶ 33.)

On May 19, 2008, an in absentia order of removal was entered against him when he was thirteen years old. (Pet. at 10, ¶ 42.) He received no notice of the hearing and had no knowledge of the proceedings. (Pet. at 10, ¶ 42.)

**B. DACA Grant and Family Ties in the U.S.**

At some point, Petitioner was granted protected status under the Deferred Action for Childhood Arrivals ("DACA") program. (Pet. at 9, ¶ 34.) His DACA status later expired. (Pet. at 9, ¶ 34.) He applied twice to renew it and was not granted renewal; he was never told why. (Pet. at 9, ¶ 34.)

Petitioner is now the father of three United States citizen children (ages 10, 5, and 3), and the children's mother is a United States citizen. (Pet. at 9, ¶ 35.) Before his detention, Petitioner saw his children daily and was responsible for their care after school. (Pet. at 9, ¶ 36.) Petitioner's extended family in the United States includes his mother, a brother, aunts, uncles, and cousins, several of whom are United States citizens or lawful permanent residents; substantially all of his family lives in the United States. (Pet. at 9, ¶ 37.)

**C. Conviction for Domestic Violence (2018).**

On July 12, 2018, Petitioner was convicted of violating California Penal Code § 236 (false imprisonment) and § 243(e)(1) (domestic battery). (Pet. at 9, ¶ 38.) Both charges arose from the same incident. (Pet. at 9, ¶ 38.) He served 89 days in jail and was then placed on five years' probation, which he completed in or about 2023. (Pet. at 9, ¶ 38.)[1] This is the only time Petitioner has been arrested for a crime. (Pet. at 10, ¶ 40.)

**D. Current Detention by ICE (January 12, 2026).**

About seven and a half years later, on January 12, 2026, Petitioner was arrested by ICE agents at the Long Beach Airport, where he had cleared security and was waiting to board a flight. (Pet. at 11, ¶ 48.) Approximately six agents surrounded him. (Pet. at 11, ¶ 48.) He was shown an ICE badge and told that he

---

[1] Petitioner states that he complied with orders to complete classes in domestic violence and alcohol use, and that he has not consumed alcohol since the incident. (Pet. at 10, ¶ 39.)

had a deportation order because his DACA had expired. (Pet. at 11, ¶ 48.) He was handcuffed, removed from the airport, and taken into ICE custody. (Pet. at 11, ¶ 48.)

**E. Prior Habeas Petition and Reopening of Removal Case (January-May 2026).**

On January 30, 2026, Petitioner filed a counseled habeas petition in this Court. Salazar-Sorto v. Warden, Adelanto Ice Processing Center, No. 5:26-cv-00418-HDB-KES (C.D. Cal.) ("Salazar I").[2] The Court dismissed the initial petition with leave to amend, and Petitioner filed a first amended petition. Id., Dkt. 13, 14.

On February 26, 2026, Petitioner moved the immigration court to reopen his removal case. (Pet. at 10, ¶ 43.) On March 11, 2026, an immigration judge ("IJ") granted the motion to reopen and rescinded the 2008 in absentia removal order, citing "substantial new facts and equities" and Petitioner's "demonstrated interest in continuing to pursue his legal status." (Pet. at 10, ¶ 44.)

Petitioner then applied for cancellation of removal under 8 U.S.C. § 1229b(b)(1). (Pet. at 10 ¶ 46.) That application remains pending. (Pet. at 10-11, ¶¶ 46-47.) He currently has a hearing scheduled in immigration court for October 20, 2026. See Executive Office for Immigration Review ("EOIR"), Automated

---

[2] The same day, the Court issued a temporary restraining order ("TRO") enjoining immigration authorities from transferring Petitioner outside of the Central District of California. Salazar I, Dkt. 5. Petitioner alleges that, notwithstanding the TRO, Respondents transferred him to a facility in Florence, Arizona on March 19, 2026. (Pet. at 11, ¶ 52.) He was held there approximately four days, during which he was "denied contact with counsel" and "housed in a unit holding roughly fifty men in a space designed for twenty-five." (Pet. at 11-12, ¶ 52.) Petitioner alleges that the "transfer was halted … after counsel intervened." (Pet. at 12, 52.) Petitioner's counsel did not seek any relief from this Court based on this violation of the Court's TRO. At some point, Petitioner was transferred back to Adelanto, California.

Case Information, https://acis.eoir.justice.gov/en/ (A# 094-946-631 (El Salvador), last accessed Sept. 29, 2026).

Meanwhile, in federal court, the government declined to oppose the first amended petition in Salazar I, admitting that Petitioner was entitled to a bond hearing. Salazar I, Dkt. 16. On May 5, 2026, the Court granted Petitioner's first amended petition and enjoined Respondents from continuing to detain Petitioner unless he was provided with an individualized bond hearing in immigration court pursuant to 8 U.S.C. § 1226(a) within seven days. Salazar, Dkt. 18.[3]

### F. First Bond Hearing (May 12, 2026).

On May 12, 2026, Petitioner had a bond hearing before an IJ. Salazar I, Dkt. 19-1 (copy of IJ's bond decision, attached to joint status report). The IJ denied bond, finding that Petitioner was both a danger to the community and a flight risk. Id.

### G. Second Bond Hearing (July 20, 2026).

On July 20, 2026, after Petitioner had been in custody for more than six months, he had a Rodriguez bond hearing before an IJ.[4] (Pet. at 13, ¶ 59.) The IJ found that the government had not met its burden of proving Petitioner was a

---

[3] The Court dismissed the initial petition because, at that time, Petitioner's motion to reopen his removal case was still pending, and it was unclear whether Petitioner's detention was governed by 8 U.S.C. § 1231 or § 1226(a). Salazar I, Dkt. 13 at 3-4. By the time the Court's final order was issued, Petitioner's immigration case had been reopened, making § 1226(a) applicable.

[4] "Named after the Ninth Circuit's decision in Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015), which has an extensive history that need not be recounted here, a Rodriguez bond hearing is a periodic custody redetermination proceeding—required in the Central District of California (for reasons not pertinent here)—where the government must show at six-month intervals that a detainee's continued detention pending removal proceedings is justified by clear and convincing evidence of flight risk or danger to the community." Penaloza Monsalve v. Semaia, No. 26-cv-00463-SVW-ACCV, 2026 WL 1625352, at *1 n.1 2026 U.S. Dist. LEXIS 121961, at *2 n.1 (C.D. Cal. June 1, 2026).

danger to the community, but the IJ denied bond based on flight risk. (Pet. at 15-17, ¶¶ 75-85; see also Pet. Ex. B / Dkt. 1-1 at 13-27 (transcript of hearing); Pet. Ex. D / Dkt. 1-1 at 32-33 (IJ's written order).)

Petitioner reserved his right to appeal the IJ's order to the Board of Immigration Appeals ("BIA"), but he ultimately decided not to appeal. (Pet. at 6, ¶ 23.)

**H. Current Habeas Proceedings.**

Petitioner filed the current Petition in this Court on August 18, 2026. (Dkt. 1.) The Petition challenged the result of the July 20, 2026 bond hearing, arguing that the IJ had misallocated and misapplied the burden of proof, issued findings that were unsupported by and contrary to the record, and failed to consider alternatives to detention. (Pet. at 20-26.) He argued that release, rather than a new bond hearing, was the appropriate remedy. (Pet. at 27-28, ¶¶ 132-38; id. at 29, ¶¶ 141-42.)

On August 19, 2026, the Court issued its Standing Order for § 2241 Immigration Petitions, which states in relevant part, "**Failing to file an answer by the due date—or filing an answer that fails to substantively respond to any claim in the petition—may result in the Court granting the petition or claim as unopposed.**" (Dkt. 8 at 1-2) (emphasis in original).

Respondents answered the Petition on August 28, 2026. (Answer at 1.) They argued that the Court should deny the Petition because Petitioner failed to exhaust his administrative remedies by appealing the IJ's July 2026 bond order to the BIA. (Id.) The Answer did not contain any argument regarding the merits of Petitioner's claims.

Petitioner replied on August 28, 2026. (Reply at 1.) He argued that exhaustion is "prudential, not statutory," and appealing to the BIA is "not an adequate remedy." (Id. at 2-3; see also Pet. at 6, ¶¶ 21-26 (admitting lack of exhaustion and arguing it should be excused).) He also argued that the Court

should grant the Petition based on Respondents' failure to address the merits of his claims. (Reply at 3 ("A response that declines to engage an argument concedes it.").)

On September 4, 2026, the Court granted the Petition. (Dkt. 13.) The Court found that exhaustion of administrative remedies should be excused and, because Respondents had not otherwise opposed the Petition, he was entitled to the relief requested therein. (Id. at 8-12.) The Court therefore ordered his release from custody. (Id. at 12.)

As noted above, the Court also ordered the parties to file supplemental briefing addressing whether Petitioner was also entitled to prospective injunctive relief preventing his re-detention without a pre-deprivation hearing as a matter of due process, given that he is a former DACA recipient who has lived in the U.S. for many years. (Id. at 13.) The parties timely did so. (Dkt. 14, 16.)

## III. DISCUSSION

### A. Parties' Arguments.

Petitioner argues, "Release from custody creates a liberty interest that may not be revoked without process," and "under Mathews, Due Process requires a hearing before re-detention." (Pet'r Suppl. Br. at 6, 11.) Respondents argue, "Petitioner's request directly contravenes the statutory limits placed on federal court jurisdiction under the Immigration and Nationality Act ["INA"]…." (Resp'ts Suppl. Br. at 2.)

### B. Legal Standard.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

A permanent injunction may be entered, at the discretion of the Court, where a movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

**C. Analysis.**

Respondents contend that the Mathews balancing test is inapplicable in this case because the Supreme Court has established that the "decisions of executive officers acting within congressional authority are due process of law," and that courts are not entitled to "invoke equitable powers to invent new immigration [remedies]," relying on Dept. of Homeland Sec. v. Thuraissigiam, 591 U.S. 103 (2020). (Dkt. 16 at 4.) Thuraissigiam explicitly cabins its holding to immigrants "in [Thuraissigiam's] position," meaning immigrants "seeking initial entry" to the

United States. Thuraissigiam, 591 U.S. at 139-40. Petitioner has been in this country since 2007 and is thus not "seeking entry" to the United States. The Mathews balancing test applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying the Mathews test to due process challenges under § 1226(a)).

**1. Liberty Interest and Private Interest Affected**

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

District courts have "'overwhelmingly found' that a noncitizen with active deferred action status [under DACA] has a protected liberty interest under the Due Process Clause." Hernandez v. Warden, Golden State Annex Det. Facility, No. 26-cv-3727, 2026 WL 1759597, at *2 (E.D. Cal. June 18, 2026) (collecting cases), R&R adopted in part, rejected in part, 2026 WL 2099232 (E.D. Cal. July 21, 2026) (adopting Magistrate Judge's reasoning but finding that release from custody, rather than the recommended bond hearing, was the appropriate remedy); see also Reyes Servin v. Semaia, No. 5:26-cv-02745-MAR, 2026 WL 1670852, at *3 (C.D. Cal. June 4, 2026) (collecting cases and noting that the "Ninth Circuit has described deferred action as a 'form of parole' and 'stay[ ] of removal.'") (quoting Lee v. Holder, 599 F.3d 973, 975 (9th Cir. 2010)); Anderson v. Chernut, No. 26-cv-01960, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) (reasoning that the "government's knowing decision not to detain an individual creates a liberty interest in their continued release").

Where a noncitizen's DACA status has expired, their liberty interest does not necessarily expire as well. Hernandez, 2026 WL 1759597, at *3 (finding that

the "expiration of petitioner DACA status does not eliminate his vested protected liberty interest," where the government had not "terminated" his status; relying on "petitioner's past DACA approval, including deferred action and employment authorization during which petitioner formed enduring attachments of normal life"); see also Salas v. Warden, No. 26-cv-03260-SRM-ACCV, 2026 WL 2365083, at *2 (C.D. Cal. Aug. 14, 2026) (finding that a petitioner's past DACA status, thirty year residence in the United States, and significant connections to the community in southern California established a substantial liberty interest protected by the Due Process Clause). Here, Petitioner has lived in the United States for nineteen years, he was a past DACA recipient, and he has significant familial ties to the United States, including three U.S. citizen children (aged 10, 5, and 3) whom he, prior to his detention, saw and cared for daily.

Accordingly, Petitioner has a constitutionally protected liberty interest in remaining free from immigration custody.

**2. Risk of Erroneous Deprivation and Value of Additional Procedural Safeguards**

"[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (C.D. Cal. Feb. 5, 2026) (citing Zadvydas, 533 U.S. at 693-94). Respondents' Answer failed to address Petitioner's claims on its merits. Consequently, the Court held that Respondents had erroneously deprived Petitioner of his liberty and granted the Petition. (Dkt. 13 at 12.)

Respondents' supplemental brief on this issue also did not address Petitioner's request for prospective injunctive relief on the merits. Respondent has

offered no evidence or argument indicating that any procedural safeguards will be employed or that any efforts will be made to prevent future erroneous deprivation of Petitioner's liberty. Nor has Respondent offered any evidence that Petitioner poses a danger to the community or is at risk of not appearing at future immigration proceedings. A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence. This is a significant procedural safeguard.

**3. Countervailing Government Interest**

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining noncitizens like Petitioner without a pre-detention hearing. Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (collecting cases); Gudavasov v. Marin, No. 26-cv00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (same). Additionally, the burden of a pre-detention hearing is low. In immigration court, custody hearings are routine and impose a minimal cost. In this Court's experience, Respondents are routinely able to comply with orders requiring that such a hearing be held within seven days. Respondents have presented no evidence to the contrary.

Accordingly, all three Mathews factors weigh in favor of providing Petitioner with a pre-deprivation hearing prior to any detention by ICE.

**4. Permanent Injunction Factors**

Respondents do not address the eBay Inc. factors, instead contending that individualized injunctive relief constitutes "direct judicial interference with the 'operation' of immigration law" as prohibited by 8 U.S.C. § 1252(f)(1). (Dkt. 16 at 2-3) (citing Garland v. Aleman Gonzalez, 596 U.S. 543 (2022)). Aleman Gonzalez explicitly holds that "§ 1252(f)(1) does not preclude a court from entering injunctive relief on behalf of a particular alien (so long as 'proceedings'

against the alien have been 'initiated'), but injunctive relief on behalf of an entire class of aliens is not allowed ...." Aleman Gonzalez, 596 U.S. at 550-51. Petitioner requests individualized injunctive relief, not injunctive relief on behalf of an entire class of people. (Dkt. 14 at 16.)

Petitioner has suffered an irreparable injury in being detained in violation of his due process rights. He would suffer irreparable injury if Respondents repeated such conduct. Legal remedies, like damages, would be inadequate. Neither the balance of hardships nor the public interest are burdened by requiring Respondents to provide basic due process should they seek to re-detain Petitioner. Thus, Petitioner has made a sufficient showing under the eBay Inc. factors to warrant an individualized permanent injunction.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that:

1. Respondents shall not re-detain Petitioner without providing Petitioner a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that Petitioner's physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.

DATED: October 6, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE